```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

NORMAN R. JEFFERY, JR.,
on behalf of himself and
others similarly situated; and
UNITED MINE WORKERS OF AMERICA
INTERNATIONAL UNION,

      Plaintiffs,

v.                           Civil Action No. 2:20-cv-00556

ERP FEDERAL MINING COMPLEX LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is Plaintiffs' Second Motion for Court's Entry of Default Judgment Made Pursuant to Federal Rules of Civil Procedure R. 55(b)(2), Against Defendant ERP Federal Mining Complex, LLC, (ECF 37) filed May 19, 2021.

### I.  Background

**A.  Factual Background**

Plaintiff Norman R. Jeffery, Jr., is a coal miner formerly employed in a classified position under a collective bargaining agreement between plaintiff United Mine Workers of America ("UMWA") and defendant ERP Federal Mining Complex, LLC

("ERP-FMC"), until a mass layoff period occurred in December 2019. The UMWA is a labor organization that represents coal miners employed by ERP-FMC's mines in Logan, Lincoln, and Boone counties for purposes of collective bargaining. The defendant ERP-FMC is a corporation engaged in the business of mining, processing, transporting and/or selling coal in West Virginia. It has employed Mr. Jeffery, and those nineteen other similarly situated individuals[1] identified in Exhibit 1 attached to the amended complaint, at its mining operations.

Mr. Jeffery instituted this action on behalf of himself, and the nineteen other similarly situated individuals, who, during their employment and in the ninety days following lay off, were "participants" and "beneficiaries" as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(7) and (8), in the Employer Benefit Plan that ERP-FMC maintained for the benefit of UMWA represented miners, their spouses, and dependents.

---

[1] These nineteen similarly situated individuals are Russell Allen, Steven Bazilla, Martin Bolyard, Samuel Browning, David Deskins, Gary Jarrell, Larry Lafferty, James Lane, Charles Lee, Paul Meade, Jeffery Miller, Charles Mullins, Gregory Price, George Rose, Steven Sampson, James Stollings, Mark Thern, Brian Trent, and Steven Wellman.  See ECF 18-1.

ERP-FMC is a signatory to a collective bargaining agreement with the UMWA, which was finalized in October 2015 and renewed in April 2018. The collective bargaining agreement is not set to expire until April 12, 2023. Article XX(b)(3) of the collective bargaining agreement requires EFP-FMC to "establish and maintain an Employee benefit plan to provide, implemented through an insurance carrier(s) or third party administrators, health and other non-pension benefits for its Employees covered by this Agreement." ECF 18-2 at 63. Article XX(b)(5) incorporates the Employer Benefit Plan by reference. Id. The collective bargaining agreement also establishes the schedule and level of benefits (Article XX(e)); provides continued health care coverage for employees upon layoff for a period of thirty to ninety days dependent upon the employee's duration of employment (Article XX(2)(b)); and provides a dispute resolution process to adjudicate claims arising under the Plan (Article XX(g)(2)). See id. at 64-65; 66-68; 70-71.

In 2015, ERP-FMC selected Anthem Blue Cross Blue Shield ("Anthem") as its healthcare administrator. At all relevant times herein, ERP-FMC has been an "employer," "administrator," and "plan sponsor," within the meaning of Sections 3(5), (16) of ERISA, 29 U.S.C. §§ 1002(5), (16), and has exercised discretionary authority or control over the

management and administration of the Employer Benefit Plan and its assets, thus functioning as a "fiduciary" of the Plan within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and as a "party in interest" to the Plan within the meaning of ERISA Section 3(14)(A) and (C), 29 U.S.C. §§ 1002(14)(A), (C).

Beginning in 2015, ERP-FMC would periodically fall into arrears on payments owed to Anthem, resulting in Anthem ceasing payment of members' medical bills. After receiving notice of service interruption, the UMWA would contact ERP-FMC to resolve the issue, and ERP-FMC would resume coverage and pay the outstanding bills. In summer and fall of 2019, the UMWA informed ERP-FMC that Anthem was again rejecting health care provider bills. In November 2019, ERP-FMC advised the UMWA that the issue was being addressed.

In December 2019, ERP-FMC engaged in a mass lay off of its bargaining unit employees. Thereafter, in January 2020, ERP-FMC informed the UMWA that it had switched its health plan administer from Anthem to United Heath Care and that healthcare benefits were in place and would be extended through March 26, 2020, which covered the ninety-day, post-layoff coverage under the collective bargaining agreement. ERP-FRC never informed its employee plan participants of its failure to provide healthcare

benefits and by March 2020, bargaining unit employees had accrued substantial unpaid medical bills.

By letter dated March 17, 2020, the UMWA informed ERP-FRC of its failure to comply with the collective bargaining agreement and requested that the parties jointly submit the dispute over healthcare coverage to the contractual dispute resolution process set forth therein. Shortly thereafter, ERP-FRC closed its operations in southern West Virginia, terminated its employees and management personnel, and refused to engage in arbitration, erroneously claiming that it had not employed any bargaining unit employees since early April 2018. To date, the medical bills of Mr. Jeffery and the nineteen other similarly situated individuals remain unpaid and unresolved given ERP-FMC's refusal to participate in the contractual dispute resolution process, rendering such process a futility.

B. Procedural History

Plaintiffs instituted this action on August 21, 2020. See ECF 1. Service of plaintiffs' initial complaint was effectuated on the defendant on September 10, 2020. See ECF 4. The defendant never answered, or otherwise responded to the complaint, or made an appearance in this matter. Upon plaintiffs' request, the Clerk entered default against the defendant on November 25, 2020. See ECF Nos. 6, 7.

On December 8, 2020, plaintiffs filed a request for the Clerk to enter default judgment against the defendant pursuant to Federal Rule of Civil Procedure 55(b)(1).  See ECF 10.  On December 23, 2020, the court entered an order concluding that the Clerk could not enter default judgment as requested by plaintiffs inasmuch as, inter alia, "the amount of compensatory damages sought in the plaintiffs' request exceeds the amount of compensatory damages that can be made certain by computation from the complaint's allegations."  ECF 13 at 2.  Plaintiffs' request was thus denied without prejudice.  Id. at 3.

On January 7, 2021, plaintiffs moved to amend their complaint to cure the deficiencies identified by the court in its December 3, 2020, order.  See ECF 15.  On January 26, 2021, the court granted plaintiffs' motion to amend, and the amended complaint was filed that same date.  See ECF Nos. 17, 18.  On February 4, 2021, the amended complaint was served on the defendant.  See ECF 21.  The defendant has not answered the amended complaint or otherwise respond or appeared.

Like the initial complaint, plaintiffs' amended complaint asserts three causes of action.  See ECF 18.  Counts I and II allege that the defendant breached its collective bargaining agreement with plaintiffs by failing to arbitrate and by failing to administer, maintain, fund, and provide benefits

under the Employer Benefit Plan, in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. Id. Count III alleges that the defendant deprived plaintiffs of, and failed to provide, the benefits owed to them under the terms of the Employer Benefit Plan, in violation of Section 502 of ERISA, 29 U.S.C. § 1132. Id.

Plaintiffs' amended complaint seeks compensatory damages in the aggregate sum certain of $174,309.07 -- the total balance of the individual plaintiffs' outstanding medical bills -- and a declaration that the defendant has breached its duties under the collective bargaining agreements and ERISA. Id.

On April 7, 2021, upon plaintiffs' request, the Clerk again entered default against the defendant. See ECF Nos. 22, 24. A return receipt card was filed on April 13, 2021, indicating the defendant received the Clerk's entry of default. See ECF 31. On April 8, 2021, plaintiffs moved for the court's entry of default judgment pursuant to Rule 55(b)(2). See ECF 28. On May 7, 2021, for the second time, the court denied plaintiffs' motion without prejudice inasmuch as the relief requested therein contained a request for injunctive relief,

relief not sought in the amended complaint, thus running afoul of Rule 54(c).[2] See ECF 33.

On May 19, 2021, plaintiffs filed the subject motion, renewing their request for the court's entry of default judgment against the defendant pursuant to Rule 55(b)(2), along with a supporting memorandum and proposed order. See ECF Nos. 37-39. Plaintiffs seek a "declaration that [defendant] breached its collective bargaining agreement with Plaintiff UMWA, in violation of Section 301 of the [LMRA], 29 U.S.C. § 185(a), by failing to administer, maintain, fund, and provide benefits pursuant to the contractually established Employer Benefit Plan, and by rendering the contractual dispute resolution process a futility by failing and refusing to arbitrate the alleged breach," and a "declaration that Defendant is in violation of ERISA, 29 U.S.C. § 1001 et seq., by depriving [Plaintiffs] of, and failing to provide, the benefits owed to them under the terms of the contractual Employer Benefit Plan." ECF 38 at 1-2.

Plaintiffs further seek an award of damages "arising from unpaid charges of health benefit providers rendered for health care services to [the] individual Plaintiffs herein,

---

[2] Fed. R. Civ. P. 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

caused by Defendant's breach of contract, for an aggregate sum total of $174,309.07." Id. at 2. Plaintiffs have filed exhibits documenting the individual plaintiffs' unpaid medical bills in support of their claimed damages. See ECF Nos. 34-1, 34-2.

## II. Governing Standard

District courts are permitted to enter default judgment under Federal Rule of Civil Procedure 55. Rule 55(a) provides "[w]hen a party against whom judgment or affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55. After default is entered by the clerk, a party may seek default judgment pursuant to Rule 55(b)(2). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." United States v. Moradi, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted).

Where proper service has been effectuated, if a party has "failed to plead or otherwise defend," that party is in default and the well-pleaded factual allegations in the

complaint as to liability may be taken as true. See Fed. R. Civ. P. 55(a); Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) (noting "[t]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact[.]" (quoting Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))). The court must determine whether the allegations support the relief sought. See id. In doing so, the court may conduct an evidentiary hearing or may dispense with the hearing if there is a sufficient evidentiary basis in the record from which to calculate the damages sought. See Fed. R. Civ. P. 55(b)(2); International Painters and Allied Trade Industry Pension Fund v. Capital Restoration & Painting Co., 919 F. Supp. 2d 680, 684 (D.Md. 2013) ("While the court may conduct an evidentiary hearing to determine damages, it is not required to do so; it may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum.").

### III. Discussion

#### A. Liability

Section 502(a) of ERISA authorizes "plan participants or beneficiaries 'to file civil actions to, among other things, recover benefits, enforce rights conferred by an ERISA plan, remedy breaches of fiduciary duty, clarify rights to benefits,

and enjoin violations of ERISA." Singh v. Prudential Health Care Plan, 335 F.3d 278, 290 (4th Cir. 2003) (quoting Marks v. Watters, 322 F.3d 316, 323 (4th Cir. 2003)). Relevant here, under Section 502(a)(1)(B) of ERISA, "a plan participant may bring a civil action 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 106 (4th Cir. 2006) (quoting 29 U.S.C. § 1132(a)(1)(B)).

Section 301 of the LMRA "provides a federal remedy for breaches of a collective bargaining agreement." Amburgey v. Consolidation Coal Co., 923 F.2d 27, 28 (4th Cir. 1999). Generally, "a union and its members must exhaust the remedies provided in their collective bargaining agreement with the employer before they seek judicial intervention." Nat'l Post Off. Mail Handlers Loc. No. 305, LIUNA, AFL-CIO v. U.S. Postal Serv., 594 F.2d 988 (4th Cir. 1979); see also Samosky v. United Parcel Service, 944 F. Supp. 2d 479, 511 (S.D.W. Va. 2013). The exhaustion requirement may be excused under certain circumstances, including when "reporting to the grievance procedure would be futile." Samosky, 944 F. Supp. 2d at 511 (internal citations omitted); see also Nat'l Post Off. Mail

11

Handlers Loc. No. 305, LIUNA, AFL-CIO, 594 F.2d at 991 (explaining the exhaustion requirement is not "inflexible" and "[a]n employee and the union acting in his behalf need only '[a]ttempt' to use the remedy provided by contract.").

Based upon the undisputed factual allegations contained in the amended complaint, the defendant has rendered the contractual dispute resolution process set forth in Article XX(g) of the collective bargaining agreement futile by its failure to submit the subject dispute thereto as requested by the UMWA. As a result, the court concludes the defendant has breached Article XX(g) of the collective bargaining agreement with Plaintiff UMWA, in violation of Section 301 of the LMRA, by failing to submit this dispute to the contractual dispute resolution process set forth therein.

The court further concludes the defendant has breached its obligations under Article XX of the collective bargaining agreement with Plaintiff UMWA by failing to administer, maintain, and fund the contractually established Employer Benefit Plan and to provide healthcare benefits for its covered employees thereunder. As a result, the defendant has violated Section 301 of the LMRA, 29 U.S.C. § 185 and Section 502 of ERISA, 29 U.S.C. § 1132.

B. <u>Damages</u>

As previously noted, plaintiffs seek an award of damages arising from the outstanding medical bills of the twenty individual plaintiffs, caused by the defendant's breach of the collective bargaining agreement, in the aggregate sum of $174,309.07. In support, plaintiffs have filed exhibits documenting the twenty individual plaintiffs' unpaid medical bills, the sum of each individual's outstanding medical bills, and the combined total thereof. <u>See</u> ECF Nos. 34-1, 34-2. Upon careful review of these exhibits, it appears that plaintiffs have miscalculated the sum of the outstanding medical bills of (1) Russell Allen, (2) Martin Bolyard, (3) David Deskins, (4) Charles Lee, (5) Paul Mead, (6) Charles Mullins, (7) George Rose, (8) James Stollings, and (9) Mark Thern, and, in turn, have miscalculated the aggregate amount of damages owed.

As to Mr. Allen, the medical bill for services rendered on December 13, 2019, indicate the amount owed as $13,824.62, not $13,824.82, as plaintiffs provide. <u>See</u> ECF 34-1 at 12, 3. As to Mr. Bolyard, the medical bill for services rendered on November 7, 2019, indicate the amount owed as $377.30, as opposed to $377.00, as indicated by plaintiffs. <u>See</u> <u>id.</u> at 65-66, 62. As to Mr. Deskins, while plaintiffs' summarization of each bill accurately reflects the amounts

provided on the medical bills themselves, the court finds the total amount of all five outstanding bills to be $3,668.66, as opposed to $3,659.66, as calculated by plaintiffs. See id. at 82.

Regarding Mr. Lee, the court finds two errors in plaintiffs' summarization of the medical bills owed. First, the bill for services rendered on December 27, 2019, indicates the amount owed as $8,325.00, not $8,327.00, as plaintiffs provide. See id. at 116, 110. Second, it appears from plaintiffs' summarization that they have double counted the $207.00 bill for services rendered to C.L. -- Mr. Lee's dependent child -- on October 14, 2019. See id. at 111. The medical bills provided show one charge for $207.00 for the October 14, 2019, services rendered. See id. at 114. The duplicative entry was thus not counted in the court's calculation.

As to Mr. Mullins, the medical bill for services rendered on December 12, 2019, shows the amount owed as $1,551.96, not $1,551.95, as plaintiffs provide in their summarization. See ECF 34-2 at 34, 29. As to Mr. Rose, plaintiffs' summarization of the medical bill amounts is accurately reflected by the medical bills themselves; however, the court calculates the total amount owed as $24,981.83, as opposed to $24,981.93, as calculated by plaintiffs. See id. at

39. The situation is similar in regard to Mr. Meade. Although plaintiffs' summarization of the outstanding medical bills is accurately reflected by the amounts due on the medical bills themselves, the court calculates the total amount owed as $26,402.37, not $26,302.37, as calculated by plaintiffs.[3] See id. at 1.

Regarding Mr. Stollings, the court finds six errors in plaintiffs' summarization of the medical bills owed. The first five appear to be typographical errors inasmuch as five of the amounts plaintiffs provide in their summary do not reflect the balances due on the medical bills themselves. Specifically, the bill for services rendered to Mr. Stollings on April 11, 2019, indicates the amount owed as $26.42, not $26.40, as plaintiffs provide. See id. at 67-68, 61. The July 30, 2019, bill lists

---

[3] As to Mr. Meade, the court notes that the amount owed provided in plaintiffs' summary for services rendered on December 16, 2019, is somewhat suspect. Plaintiffs' summary lists the charge as $4,253.00, with Anthem paying $0.00 thereof. See ECF 34-2 at 1. The medical bill itself lists the total charge as $4,253.00, with insurance coverage listed as $3,109.00, and the total due from patient as $1,444.00. See ECF 34-2 at 16. Elsewhere on the bill, the $3,109.00 insurance coverage is described as an "anticipated amount," the "amount paid" from the insurance box is blank, and the claim status box states "payment pending." Confusingly, in the "comments" section of the bill, it is noted that "your insurance has paid" and to "please remit balance due." Although somewhat unclear, the court assumes Mr. Meade's insurance never covered the bill and plaintiffs' summary listing the charge as $4,253.00 is accurate.

the total balance due as $138.33, not $138.00. See id. at 71, 61. The September 9, 2019, bill lists the total as $4,819.14, not $4,819.00. See id. at 83, 62. The April 9, 2019, bill lists the total as $123.01, not $123.00. See id. at 79, 63.

Lastly, plaintiffs' summarization for the services rendered to Susan Stollings -- Mr. Stollings' spouse -- on July 10, 2019, lists the amount owed as $201.00, noting Anthem paid $0.00 thereof. See id. at 64. The medical bill for this particular service, however, differs from plaintiffs' summary. Specifically, the medical bill lists the total charges as $201.00, with "discounts" in the amount of $87.97, and $113.03 being due. Id. at 97. The bill then notes that Anthem paid the $113.03 due. Id. The total cost owed on the bill is listed as $0.00. Id. There is also a handwritten notation on the top of the bill that reads "they pd." Id. Thus, it appears that Mr. Stollings' insurance covered the July 10, 2019, bill, and the court has not counted it in its calculations.[4]

---

[4] Plaintiffs' summarization lists the total amount of Mr. Stollings' outstanding medical bills as $42,560.00. See ECF 34-2 at 61. The court notes, however, that even if it were to use the numbers provided by plaintiffs, the total amount comes out to $42,558.15, not $42,560.00.

Finally, as to Mr. Thern, while plaintiffs' summarization of the four medical bills is accurately reflected by the amounts due on the medical bills themselves, the court calculates the total amount owed as $2,376.27, not $2,376.00, as calculated by plaintiffs. See id. at 121.

Taking into account the errors outlined herein, the court's calculation of the aggregate damages, when compared to plaintiffs' calculation, is as follows:

| Individual | Plaintiffs' Calculation | Court's Calculation |
|---|---|---|
| *Allen, Russell | $ 21,270.09 | $21,269.89 |
| Bazilla, Steven | $ 1,231.23 | $1,231.23 |
| *Bolyard, Martin | $ 3,969.00 | $3,969.30 |
| Browning, Samuel | $ 484.50 | $484.50 |
| *Deskins, David | $ 3,659.66 | $3,668.66 |
| Jarrell, Gary | $ 2,736.79 | $2,736.79 |
| Jeffery, Norman | $ 3,923.00 | $3,923.00 |
| Lafferty, Larry | $ 800.00 | $800.00 |
| Lane, James | $ 525.00 | $525.00 |
| *Lee, Charles | $ 24,158.73 | $23,949.73 |
| *Meade, Paul | $ 26,302.37 | $26,402.37 |
| Miller, Jeffery | $ 328.41 | $328.41 |
| *Mullins, Charles | $ 3,913.60 | $3,913.61 |
| Price, Gregory | $ 2,715.00 | $2,715.00 |
| *Rose, George | $ 24,981.93 | $24,981.83 |
| Sampson, Steven | $ 3,898.76 | $3,898.76 |
| *Stollings, James | $ 42,560.00 | $42,357.41 |
| *Thern, Mark | $ 2,376.00 | $2,376.27 |
| Trent, Brian | $ 3,225.00 | $3,225.00 |
| Wellman, Steven | $ 1,250.00 | $1,250.00 |
| *AGGREGATE TOTAL | $ 174,309.07 | $174,006.76 |

Accordingly, the court concludes that plaintiffs are entitled to the total of their outstanding medical bills, caused by the defendants' breach of its obligations under Article XX of the collective bargaining agreement to administer, maintain, and fund the Employer Benefit Plan and provide healthcare benefits thereunder, in the aggregate, principal sum of $174,006.76.

## IV. Conclusion

Based upon the foregoing discussion, the court ORDERS as follows:

1. That plaintiffs' second motion for entry of default judgment (ECF 37) be, and it hereby is, GRANTED;

2. That default judgment be, and it hereby is, ENTERED against the defendant ERP Federal Mining Complex LLC in the principal amount of $174,006.76; and

3. That this action be, and it hereby is, DISMISSED and STRICKEN from the docket.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record, to ERP Federal Mining Complex, LLC, c/o Corporation Service Company at 209 West Washington Street Charleston, WV 25302, and to any unrepresented parties.

ENTER: March 8, 2022

_____
John T. Copenhaver, Jr.
Senior United States District Judge